

Superior Court of the District of Columbia

Civil Division

Nathaniel M. Henderson,
Plaintiff

2005 CA 007435 B

v

MTV
Defendant

Joseph Molko
1515 ~~New York~~ Broadway
New York, NY 10036

~~Statement Of Claim~~
Amended Complaint

I, Nathaniel M. Henderson, (herein referred to as "Plaintiff"), makes the following Claim against MTV, (herein referred to as "Defendant").

On or about August 2nd, 9th, and no later than the 16th in the year 2003, in the 3rd, 10th, 17th afternoon, the television network known as "MTV" aired a television show; whereas, the Host of this show was referring (speaking) to someone in the viewing audience informing this individual in the viewing that MTV wanted to present this person on the red carpet at an upcoming awards show later that same month (August, 2003).

In order to accept MTV's offer, this individual in the viewing audience simply had walk out of the front door and down the street, where a limo was waiting to take this this person to New York City to make preparation for the upcoming awards show. The Host of this television show gave four clues as to who this person in the viewing Audience was.

The first clue that the Host announced was a declaration that MTV have taken care of the necessary steps for this individual to travel to New York City. The second clue that the Host announced was "she likes for you to wear collar-ed shirts." The third clue that the Host announced to the viewing audience as to who this person in the viewing audience was; "this person goes to Chinatown to buy sexual stimulants.

Finally, the fourth clue was a series of dates that repeatedly flashed on the television

2

screen: "July 24, 2003 and August 4, 2003.

The Plaintiff contends that he was infact the individual the show, as well as, the Host was referring to. Furthermore, the Plaintiff maintains that his rights to privacy was violated, causing insurmountable mental anguish, stress, depression, anxiety, confusion, and embarrassment.

Argument

The Plaintiff asserts that the first clue given by the Host of the show, as to what individual in the viewing audience the Host of identifying, indicating that MTV has taken the necessary steps to make it possible for this individual in the viewing audience to travel to New York City, referred to the Plaintiff. At the time of the airing of the show, the Plaintiff was on supervised release, under the supervision of the United States Probation Office in Washington, D.C., making it impossible to travel outside the Washington, D.C. without the permission of the Probation office. The Plaintiff further asserts that MTV had not been given permission by the Plaintiff to act on the Plaintiff's behalf to make any agreements or arrangements with the United States Probation Office to travel to New York City. The Plaintiff further maintains that "no agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request, by or with prior written constent of, the individual to whom the records pertains." Privacy Act (5 U.S.C. 552a)

3

MTV had no legal right to "take any necessary steps" to make it possible for the plaintiff to travel to New York City. To discuss the Plaintiff, act as the Plaintiff's travel Agent, or negotiate any travel plans with the United States Probation Office, amounts to an invasion of the Plaintiff's privacy and seclusion. The right to privacy has been defined as the right to be left alone. Again, MTV had no written consent to act on behalf of the Plaintiff to make it possible for the Plaintiff to travel across the street or to the Moon; to discuss with any Government Agency private information.

" One who intentionally intrudes physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to that person for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Law Of Torts, 652A.

Certainly, this Court and any reasonable human being would find it highly offensive if a person's neighbor called their employer, learned a person's leave balance or vacation time-earned, then called a travel agency to make travel plans for that person. What that neighbor did to another neighbor amounts to an invasion of privacy, even right up to the extent of arranging a limo to take the neighbor to the airport.

Although, a Parolee's information is a matter of public record and available under The Freedom Of Information Act, this Act of Congress never intended to grant private parties the right to retrieve information under the FOIA, then use this material to act to act on behalf of the Parolee. In Gowan v U.S. Dept. of the Air Force, 148 F.3d 1182,

4

1193 (10th Cir. 1998), ("adopt{ing} the Third Circuit's reasoning {in Quinn}, holding that an agency may not defend a release of Privacy Act information by stating that the information is a matter of public record, "especially if the intent of disclosure is to further perpetuate intrusion. Simply put, MTV over-stepped their bounds by airing a a television show in which the Plaintiff was the subject of the show.

The Plaintiff further asserts that the second clue announced by the Host of the show, "she likes for you to wear collar-ed shirts," was information obtained by the Defendant by means of intrusion. Whereas, at the time of the show's airing, the Plaintiff was romantically linked to a woman who on several occasions had expressed in private conversations to the Plaintiff that she preferred to Plaintiff to wear shirts with a collar. The Plaintiff contends that this information could no other way by discovered by the Defendant without the use of listening devices or eavesdropping apparatus. The Plaintiff, nor the woman the Plaintiff was romantically linked to, at no time expressed or reveal this information directly or indirectly to the Defendant.

Therefore, the Plaintiff asserts that the Defendant refused to recognize a common-law right to privacy. As the twenty-first century draws near and the threat to individual privacy mounts with the emergence of new technologies capable of ever more intrusive application, subsequently the use of electronic transmitting or recording devices to monitor conversation without the consent of the parties involved, amounts to a gross invasion of privacy. See Electronic Comm. Privacy Act, 18 U.S.C. 2516. See Roberson

5

v Rochester Folding Box Company, 171 N.Y. 538, 64 N.E. 442 (1902).

"What is whispered in the closet shall not by proclaimed from the house-tops." 4 Harvard Law Review 193-195/6.

In revealing the third clue, the Host of the show announced to the viewing Audience that "this person goes to Chinatown to buy sexual stimulant." At the time of airing, the Plaintiff was taking public transportation to Chinatown in Washington, D.C. to purchase herbal drinks designed to remove toxins from urine. The Plaintiff contends that a real relationship between the accounts of the show and the Plaintiff's actual lifestyle existed. See Pringe v Penthouse International, 695 F.2d 438 (10th Cir. 1982). Holding that "statements must be and of concerning the Plaintiff." Whereas, it can be reasonably understood as describing actual facts about the Plaintiff or actual events in which the Plaintiff participated. See Pringe.

The Plaintiff again, ask the Court "is it acceptable conduct to watch a person's comings and goings, then use this information to reveal to a national audience?"

The Defendant acted wantonly, as well as, reckless; which calculates to an Intrusion of the basic right to be secluded and left alone.

Finally, the fourth clue, a series of dates {July 24, 2003 and August 4, 2003}, was significant in referring to the Plaintiff because these dates represented dates that the Plaintiff reported to an Out-Patient Substance Abuse Program. The August 4, 2003 date represents the day that the Plaintiff reported to Next Step Program to submit

6

to a random urinenalysis. The July 24, 2003 dates also represented a date that the Plaintiff reported to Next Step Program and submitted a urine sample, in which The reults were positive for substance abuse. In summary, this information was larned by the Defendant by deploying intrusive means, invading the Plaintiff's privacy, and outright refusing to recognized the Plaintfiff's First Admendment Rights. The Defendant violated the Plaintiff's rights, therefore the Plainfiff seeks judgement against the Defendant for intentionally inflicting emotional stress, public humiliation, embarrassment, pain and suffering, and mental anguish. The Plaintiff seeks the amount of $100 million dollars in damages and any other damages in which this Court feels the Plaintiff is entitled to. The Plaintiff prays That this Court renders him all the relief he is deserved.

Address of the Plaintiff:

*[signature]*

Nathaniel M. Henderson
3820 Southern Avenue, S.E.
Washington, D.C. 20020


Address of the Defendant:
MTV
1515 Broadway
New York, NY 10036
(212) 258-8000