IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **NATHANIEL M. HENDERSON,** | : | |
| | : | |
|     **Plaintiff,** | : | |
| | : | |
| v. | : | Case No.  1:05CV01937(EGS) |
| | : | |
| **MTV,** | : | |
| | : | |
|     **Defendant.** | : | |

**DEFENDANT MTV'S MOTION TO DISMISS THE
AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

    Defendant MTV respectfully moves this Court to dismiss with prejudice the Amended Complaint of Nathaniel M. Henderson ("Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(6) because the Amended Complaint fails to state a claim upon which relief could be granted.  In support of its motion, MTV relies upon its supporting Memorandum of Points and Authorities submitted herewith.

    As set forth more fully in MTV's Memorandum of Points and Authorities, Plaintiff's lawsuit is barred by the statute of limitations.  In addition, Plaintiff cannot properly state a claim for invasion of privacy because the television program which he alleges to be actionable cannot reasonably be construed as "of and concerning" this Plaintiff as a matter of law.

    WHEREFORE, MTV requests that the Court grant its motion and enter an Order dismissing the Amended Complaint with prejudice.

1

Dated: October 7, 2005

Respectfully submitted,

LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

By:      /s/   Michael D. Sullivan
    Michael D. Sullivan (D.C. Bar No. 339101)
    Thomas Curley (D.C. Bar No. 473798)
1050 Seventeenth Street, N.W., Suite 800
Washington, D.C. 20036
(202) 508-1100
(202) 861-9888 (facsimile)

*Attorneys for Defendant MTV*

**CERTIFICATE OF SERVICE**

Pursuant to Local Rule 5.4, I hereby certify that, on this 7th day of October 2005, the foregoing Motion to Dismiss the Amended Complaint, Memorandum of Points and Authorities in support thereof and Proposed Order have been filed via CM/ECF with true and correct copies of same served upon the *pro se* plaintiff via first class mail, postage prepaid to the following address:

>Nathaniel M. Henderson
>3820A Southern Avenue, S.E.
>Washington, D.C. 20020

>  /s/   Thomas Curley
>Thomas Curley

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATHANIEL M. HENDERSON, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Case No.  1:05CV01937(EGS) |
| : | |
| MTV, : | |
| : | |
| Defendant. : | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MTV'S MOTION TO DISMISS THE AMENDED COMPLAINT**

Defendant MTV respectfully submits this Memorandum of Points and Authorities in support of its Motion to Dismiss the Amended Complaint ("Compl.") with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) because the Amended Complaint fails to state a claim upon which relief could be granted.[1]

**STATEMENT OF FACTS**

Plaintiff is a resident of the District of Columbia and was formerly under the supervision the United States Probation Office.  *See* Compl. at 2.[2]  Plaintiff alleges that "no later than" August 17, 2003, defendant MTV, a television network devoted primarily to music-related programming, aired a program which was apparently viewed by Plaintiff.  *See id*.  In the context of this television program, the title of which Plaintiff does not identify, the program's host spoke directly to an individual in the viewing audience to inform that individual "that MTV wanted to present this person on the red

---

[1] The proper corporate name of the defendant is MTV Networks, a division of Viacom International.

[2] The paragraphs of the Amended Complaint are not individually numbered and therefore citations herein are to the pages upon which these facts are alleged.

1

carpet at an upcoming awards show later that same month (August, 2003)." *Id*. The program host announced that, in order for this individual in the viewing audience to accept MTV's offer, the individual "simply had to walk out of the front door and down the street, where a limo was waiting to take this person to New York City." *Id*. Apparently in an effort to prompt the individual to whom the program host was referring to walk out his front door to that waiting limousine, the program host then "gave four clues as to who this person in the viewing Audience was." *Id*. These four clues were that:

- MTV had already "taken care of the necessary steps for this individual to travel to New York City";
- an unnamed female preferred for the individual "'to wear collar-ed shirts'";
- "'this person goes to Chinatown to buy sexual stimulants'"; and
- the dates "'July 24, 2003 and August 4, 2003'" were of significance to the individual.

*Id*. at 2-3 (quoting program). Plaintiff does not allege that, at the time of the airing of the program in August 2003, Plaintiff walked out of his home to find a waiting limousine to take him to New York, *see id*. at 2-3, or that MTV otherwise informed him that it "wanted to present [Plaintiff] on the red carpet at an upcoming awards show," *id*. at 2. Nor does Plaintiff allege that he attended an awards show at MTV's expense. *See id*. at 2-3. At bottom, Plaintiff does not allege that he was identified by name in the program or that he was in any way visually depicted in the program. *See id*.

Plaintiff purports to state a cause of action for invasion of privacy on the basis that the television program at issue "can be reasonably understood as describing actual facts about the Plaintiff or actual events in which the Plaintiff participated." *Id*. at 6. *See*

2

*also*, *e.g.*, *id*. at 5 ("MTV over-stepped their bounds by airing a television show in which the Plaintiff was the subject of the show."). Plaintiff alleges that the clues offered by the program host refer to him, specifically that "at the time of the show's airing, the Plaintiff was romantically linked to a woman who on several occasions had expressed in private conversations … that she preferred [] Plaintiff to wear shirts with a collar." *Id*. at 5. Plaintiff further alleges that, during the period in 2003 in which the program aired, he was "taking public transportation to Chinatown," albeit not for the purpose of purchasing sexual stimulants as the host stated, but instead so that Plaintiff could "purchase herbal drinks designed to remove toxins from [his] urine." *Id*. at 6.[3] In addition, Plaintiff alleges that the dates referenced by the host – July 24, 2003 and August 4, 2003 – are of significance to him. *Id*. at 6-7. According to Plaintiff, "these dates represented dates that the Plaintiff reported to an Out-Patient Substance Abuse Program" or "submitted a urine sample, in which [t]he results were positive for substance abuse." *Id*. at 7.

As a result of the airing of the program in August 2003, Plaintiff alleges that MTV "intentionally" caused him to suffer "public humiliation, embarrassment, pain and suffering and mental anguish." *Id*. at 7. Plaintiff seeks damages of $100 million. *Id*. Plaintiff filed an initial Complaint on September 13, 2005 in the Superior Court of the District of Columbia and, on September 15, Plaintiff filed an Amended Complaint in Superior Court. *See id*. at 1. Defendant removed this action to this Court.

---

[3] It would appear as if Plaintiff may have also intended to assert a cause of action for "false light" invasion of privacy or even defamation, as Plaintiff affirmatively avers that he did not travel to Chinatown for the purpose of purchasing sexual stimulants. *See* Compl. at 6. In any event, whether Plaintiff's claims sound in defamation or invasion of privacy, the claims fail as a matter of law as demonstrated below.

**ARGUMENT**

In deciding a motion to dismiss under Rule 12(b)(6), this Court must of course assume that the factual allegations in the Amended Complaint are true. However, the Court is not similarly constrained with respect to the Amended Complaint's legal conclusions. Were it otherwise, a Rule 12(b)(6) motion would serve no function, for its purpose is to provide a defendant with a mechanism for testing the legal sufficiency of the complaint. *See*, *e.g.*, *Rodriguez v. Nat'l Center for Missing & Exploited Children*, No. 03-120 (RWR), 2005 U.S. Dist. LEXIS 5658, at ** 20-21 (D.D.C. March 31, 2005) (in adjudicating a motion to dismiss, the court "need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint" nor "must the court accept legal conclusions cast in the form of factual allegations") (dismissing *pro se* complaint pursuant to Rule 12(b)(6)).[4]

**I.     PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS**

As Plaintiff acknowledges, his invasion of privacy claim arose "no later than" August 17, 2003 with the airing by MTV of the television program alleged to be actionable. Compl. at 2. Because the District of Columbia's one-year statute of limitations for intentional torts applies to invasion of privacy claims, Plaintiff's lawsuit – which was filed on September 13, 2005 more than two years after Plaintiff's claim arose – is time barred. *See id*. at 1.

---

[4] Moreover, recognizing the values reflected in the First Amendment and the significant risk that even a non-meritorious lawsuit may stifle free expression, courts have observed that in this area, perhaps more than in any other, the early sifting of groundless allegations from meritorious claims made possible by a Rule 12(b)(6) motion is particularly appropriate. *Accord*, *e.g.*, *Garrett v. Viacom Inc.*, No. 1:03CV22, 2003 U.S. Dist. LEXIS 21007 (W.Va. Aug. 27, 2003) (granting motion to dismiss of VH1 music television network where program at issue not actionable as a matter of law).

4

This Court and the U.S. Court of Appeals for the District of Columbia Circuit have consistently applied the one-year statute of limitations for intentional torts mandated by D.C. Code § 12-301(4) to invasion of privacy claims. *See*, *e.g.*, *Mittleman v. United States*, 104 F.3d 410, 415 (D.C. Cir. 1997) (invasion of privacy claim filed by plaintiff more than one year after claim arose is time barred); *Nix v. Hoke*, 139 F. Supp. 2d 125, 134 n.9 (D.D.C. 2001) (holding same); *Grunseth v. Marriott Corp.*, 872 F. Supp. 1069, 1074-75 (D.D.C. 1995) (same), *aff'd on other grounds*, No. 95-7021, 1996 U.S. App. LEXIS 3688 (D.C. Cir. Feb. 9, 1996); *Dooley v. United Techs. Corp.*, No. 91-2499, 1992 U.S. Dist. LEXIS 8653, at ** 40-41 (D.D.C. June 17, 1992) (same); *Doe v. Se. Univ.*, 732 F. Supp. 7, 8 (D.D.C. 1990) (same). *Accord*, *e.g.*, *Doe v. Medlantic Health Care Grp., Inc.*, 814 A.2d 939, 944 & n.3 (D.C. 2003) (noting one-year statute of limitations for invasion of privacy claim).

For example, in *Doe v. Southeastern University*, a *pro se* plaintiff brought an invasion of privacy claim alleging that officials of the college which he attended improperly disclosed plaintiff's positive test for the HIV virus. *See Doe*, 732 F. Supp. at 8. The plaintiff in *Doe* alleged he was embarrassed as a result of the disclosure and was ultimately forced to transfer to another college. *Id*. The Court determined that the plaintiff's invasion of privacy claim was governed by the one-year statute of limitations of D.C. Code § 12-301(4) and, because the plaintiff filed suit some sixteen months after the "last alleged invasion of privacy occurred," his claim was time barred. *Id*.

Similarly, in *Grunseth v. Marriott Corporation*, a plaintiff sued a hotel for invasion of privacy after it purportedly released to journalists a receipt indicating that the plaintiff had stayed at the hotel on a certain night *See Grunseth*, 872 F. Supp. at 1070-71.

The receipt appeared to corroborate an alleged affair that the plaintiff may have engaged in and its disclosure to journalists forced plaintiff to abandon his political campaign for governor of Minnesota. *Id*. at 1071. In dismissing the plaintiff's claim in *Grunseth* because the claim arose fourteen months before plaintiff filed suit, the court held that D.C. Code § 12-301(4) applied to plaintiff's claim because the tort of invasion of privacy is analogous to claims for "libel, slander, assault, and other similar intentional torts" for which a one-year statute of limitations is mandated. *Id*. at 1074. In so holding, the court rejected plaintiff's contention that the three-year "catch-all" statute of limitations, *see* D.C. Code §12-301(8), should be applied to invasion of privacy claims. *Grunseth*, 872 F. Supp. at 1075. *See also*, *e.g.*, *Nix*, 139 F. Supp. at 134 n.9 (privacy claim predicated on alleged wiretapping is time barred where suit is filed more than one year after wiretapping occurred).

Here, as the Amended Complaint makes plain on its face, Plaintiff's invasion of privacy claim arose "no later than" August 17, 2003. Compl. at 2. Accordingly, because twenty-five months elapsed between the time that Plaintiff's cause of action arose and the filing of his lawsuit, Plaintiff's claims are time barred and should be dismissed.[5]

## II. PLAINTIFF'S INVASION OF PRIVACY CLAIM ALSO FAILS BECAUSE THE MTV PROGRAM WAS NOT "OF AND CONCERNING" HIM

Even assuming Plaintiff's cause of action for invasion of privacy is not barred by the statute of limitations, which as demonstrated above it is, his claim is fatally defective nonetheless because the television program at issue was not "of and concerning" this Plaintiff as a matter of law. Simply put, Plaintiff's privacy cannot be said to have been

---

[5] To the extent Plaintiff's Amended Complaint could be read to assert a claim for defamation, *see* n.3 *supra*, any such claim is also subject to a one-year statute of limitations and is thus similarly time barred, *see*, *e.g.*, *Grunseth*, 872 F. Supp. at 1074.

6

invaded within the meaning of this tort merely because he purportedly shares certain common characteristics with an individual referenced in a television program aired by MTV.

The *sine qua non* of the tort of invasion of privacy is that any alleged invasion by the defendant must be personal or individual to the privacy concerns of the would-be plaintiff. *See*, *e.g.*, *Kitt v. Capital Concerts, Inc.*, 742 A.2d 856 (D.C. 1999). In other words, the alleged invasion of privacy must be "'of and concerning'" the plaintiff. *Id*. at 859 (citation omitted).[6] In *Kitt*, for example, the lead clarinetist of the National Symphony Orchestra ("NSO") brought an invasion of privacy claim against a television production company after it aired a program in which an actor was used to portray an NSO clarinetist performing a solo. *Id*. at 857. The television production company resorted to use of the actor after the plaintiff declined to participate in its television

---

[6] "Invasion of privacy" is not a single tort, but instead four similar torts: (1) intrusion upon one's solitude or seclusion; (2) public disclosure of private facts; (3) publicity that places one in a false light in the public eye; and (4) appropriating one's name or likeness for another's benefit. *See*, *e.g.*, *Wolf v. Regardie*, 553 A.2d 1213, 1217 (D.C. 1989). Which of these four constituent torts Plaintiff advances here is legally immaterial, as Plaintiff must still demonstrate that the challenged television program is "of and concerning" him to state a cognizable claim in the first instance. *Accord* Compl. at 6 (the allegedly actionable "'statements must be of and concerning the Plaintiff'") (citing *Pring v. Penthouse Int'l, Ltd.*, 695 F.2d 438 (10th Cir. 1982)).

The same requirement applies in defamation actions. An allegedly defamatory statement must also be "of and concerning" the plaintiff – *i.e.*, the defamatory statement must be clearly directed at the plaintiff. *E.g.*, *Summerlin v. Washington Star*, No. 81-2571, 1981 U.S. Dist. LEXIS 18625, at ** 4-5 (D.D.C. Dec. 31, 1981) (granting newspaper's motion to dismiss because challenged publication "must leave no doubt" that statement is "of and concerning" plaintiff); *Service Parking Corp. v. Washington Times Co.*, 92 F.2d 502, 504 (D.C. Cir. 1937) ("'If the words used really contain no reflection on any particular individual, no averment or innuendo can make them defamatory.'") (citation omitted); *see also Restatement (Second) of Torts* § 613 cmt. d (1977) (plaintiff must prove that defamatory statement "was published of and concerning him, that is, he must satisfy the court that it was understandable as intended to refer to himself").

program. *Id*. at 858. In rejecting the plaintiff clarinetist's invasion of privacy claim, the court in *Kitt* noted that the actor on the television program was not identified by name as the plaintiff, nor was he identified as the lead clarinetist of the NSO, plaintiff's position within the orchestra. *Id*. at 859-60. In short, although the actor was portrayed as an NSO clarinetist, this connection to the plaintiff "was 'too tenuous a thread on which to permit a jury to hang identification, with consequent liability for invasion of privacy.'" *Id*. at 860 (citation omitted). In so holding, the court in *Kitt* rejected plaintiff's argument that whether the television program at issue could reasonably be construed as "of and concerning" him necessarily presented a jury question. *Id*. at 859. On the contrary, under District of Columbia law – as in other jurisdictions following the Restatement definition of the invasion of privacy tort – it is for the court to determine in the first instance whether an allegedly actionable broadcast or publication can reasonably be construed as "of and concerning" the plaintiff. *Id*. at 859-60. *See also, e.g.*, *Klayman v. Segal*, 783 A.2d 607 (D.C. 2001) (affirming dismissal of invasion of privacy claim pursuant to Rule 12(b)(6) where allegedly actionable publication was not reasonably capable of meaning ascribed to it by plaintiff).

Similarly, in *Bernstein v. National Broadcasting Company*, 129 F. Supp. 817, 818-21 (D.D.C. 1955), *aff'd*, 232 F.2d 369 (D.C. Cir. 1956), a plaintiff brought an invasion of privacy lawsuit after the NBC television network broadcast a program about an individual wrongly convicted of murder who ultimately wins his freedom. In *Bernstein*, there was no doubt that the NBC program at issue was loosely based on the plaintiff's own wrongful conviction, but the plaintiff was not identified by name in the program and many details of the program diverged from the circumstances of plaintiff's

8

own travails. *See id*. Even though the plaintiff shared a certain physical resemblance with the actor who portrayed him on the NBC program and the true story of plaintiff's own conviction was broadly consistent with NBC's dramatization of it, the court in *Bernstein* rejected plaintiff's invasion of privacy claim. *Id*. at 831-32. The court held that plaintiff would not have been identifiable by the public on the basis of the NBC program, save for (arguably) some subset of television viewers who were already so intimately familiar with plaintiff's life story that they could connect him with the program. *Id*. at 832. As such, the NBC program simply was not actionable. *Id*. at 833-34 ("the gist of an action for invasion of privacy is a wrongful disclosure by the defendant" and there can be no liability where the "defendant has published facts in such a way that there has been no disclosure [of these facts] to persons not already aware of them"). *See also, e.g.*, *Polsby v. Spruill*, No. 96-1641, 1997 U.S. Dist. LEXIS 11621, at *22 (D.D.C. Aug. 1, 1997) (plaintiff cannot state claim for invasion of privacy predicated upon alleged similarities between plaintiff and character in book where, despite plaintiff's construction of book, its content does not "actually depict[]her in any way"), *aff'd*, No. 97-7148, 1998 U.S. App. LEXIS 7908 (D.C. Cir. March 11, 1998).[7]

Here, in this case, it is simply untenable to construe the television program aired by MTV as one "in which the Plaintiff was the subject of the show." Compl. at 5. On the

---

[7] Other jurisdictions that adhere to the Restatement definition of the tort of invasion of privacy have reached the same legal conclusion in analogous factual circumstances. *See, e.g.*, *Costanza v. Seinfeld*, 693 N.Y.S.2d 897 (N.Y. Sup. Ct. 1999) (granting defendant's motion to dismiss invasion of privacy claim brought by plaintiff who alleged that he shared certain characteristics with television character, including the same last name), *aff'd in relevant part*, 719 N.Y.S.2d 29 (N.Y. App. Div. 2001); *Polydoros v. Twentieth Century Fox Film Corp.*, 79 Cal. Rptr. 2d 207, 212 (Cal. Ct. App. 1997) (granting defendant's motion for summary judgment on plaintiff's privacy claim where, despite plaintiff's allegation that film character was based on his life, no "sensible person could assume or believe from seeing [film] that it purports to depict" plaintiff).

9

contrary, this Plaintiff would not have been identifiable by the viewing audience on the basis of the MTV program. Plaintiff acknowledges that he was not identified by name nor visually depicted in the program. *See id*. at 2-3. Indeed, Plaintiff specifically alleges that the program host invited the individual in the viewing audience to whom he was directing his remarks to "simply … walk out the front door and down the street, where a limo was waiting to take this person to New York City" for the awards show. *Id*. at 2. Yet, Plaintiff does not allege that he walked out of his front door to find a waiting limousine or that Plaintiff attended an awards show at MTV's expense. *See id*. at 2-3.

Moreover, the allegations of the Amended Complaint itself negate the conclusion that the "four clues" offered by the program host could reasonably be construed to specifically refer to this Plaintiff. To begin with, as Plaintiff suggests, it is implausible that MTV could have arranged for Plaintiff to travel to New York City in August 2003 because "Plaintiff was on supervised release, under the supervision of the United States Probation Office in Washington, D.C., making it impossible [for him] to travel outside the Washington, D.C. [area] without the permission of the Probation Office." *Id*. at 3. In addition, as Plaintiff avers, he does *not* go "'to Chinatown to buy sexual stimulants'" as the program host stated, *id*. at 2, but Plaintiff instead travels to Chinatown for the altogether different purpose of "purchas[ing] herbal drinks designed to remove toxins from [his] urine," *id*. at 6. The remaining clues offered by the program host – that certain dates were of relevance to the individual to whom the host was speaking and that this individual had been encouraged to wear collared shirts – hardly qualify as remarks intended to single out this Plaintiff from among all other television viewers. *See id*. at 2-

10

3. This is particularly true where the only other clues offered by the program host, by Plaintiff's admission, make it unlikely Plaintiff was being addressed by the host.

In any event, in both *Kitt* and in *Bernstein*, the courts squarely rejected invasion of privacy claims as not reasonably "of and concerning" the plaintiffs in those cases where the connections between the challenged television programs and those plaintiffs were demonstrably more pronounced than the purported similarities alleged by Plaintiff here. *See Kitt*, 742 A.2d at 858 (plaintiff contended that program allegedly invaded his privacy by using actor to visually depict him after plaintiff refused to appear on program); *Bernstein*, 129 F. Supp. at 818-820 (plaintiff contended that program broadcast fictionalized account of his criminal case). *See also Costanza*, 693 N.Y.S.2d at 898-99 (plaintiff contended that character in program had same last name and hometown).

At bottom, the allegations of the Amended Complaint are far "'too tenuous a thread on which to permit a jury to hang identification [of this Plaintiff], with consequent liability for invasion of privacy.'" *Kitt*, 742 A.2d at 860 (quoting *Bernstein*, 129 F. Supp. at 832). Accordingly, Plaintiff's cause of action for invasion of privacy should be dismissed because the television program aired by MTV in August 2003 cannot reasonably be construed as "of and concerning" this Plaintiff as a matter of law.

## **CONCLUSION**

For the foregoing reasons, MTV respectfully requests that the Court dismiss the Amended Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) because it fails to state a claim upon which relief could be granted.

Dated: October 7, 2005   Respectfully submitted,

LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.


By:      /s/   Michael D. Sullivan
   Michael D. Sullivan (D.C. Bar No. 339101)
   Thomas Curley (D.C. Bar No. 473798)
1050 Seventeenth Street, N.W., Suite 800
Washington, D.C. 20036
(202) 508-1100
(202) 861-9888 (facsimile)

*Attorneys for Defendant MTV*